<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AMGUARD INSURANCE COMPANY, | Civil No.: 25-cv-13202 (KSH) (CF) |
| *Plaintiff*, |  |
| v. |  |
| ALABED MNAWER, | <u>OPINION</u> |
| *Defendant*. |  |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.      Introduction**

Amguard Insurance Company asks for a declaration that it has no duty to defend or indemnify its insured, defendant Alabed Mnawer, against tort claims filed against him in New Jersey state court.  For the reasons set forth below, the Court declines to exercise its discretionary jurisdiction over this case and denies Amguard's motion for default judgment.

**II.      Background**

The complaint alleges as follows.  Amguard is a Nebraska corporation with its principal place of business in Pennsylvania.  (D.E. 1, Compl. ¶ 2.)  Mnawer is a resident of New Jersey and lives at 33 Dietrich Lane in North Haledon.  (*Id.* ¶ 3.)

This matter relates to a state court tort action filed by Glenn Schmidt in November 2024 (the "underlying action").  (*Id.* ¶ 12.)  Mnawer rented Schmidt the basement of his residential property at 33 Dietrich Lane.  (D.E. 1-1 & Ex. B, State Court Compl. ¶ 1.)  According to the state court complaint, on November 16, 2022, Mnawer "bang[ed] on the outside wall of Plaintiff[] [Schmidt's] apartment . . . broke through the wall and caused injuries to Plaintiff."  (*Id.* ¶¶ 1-4.)  Count One alleges that Mnawer "acted negligently in the infliction of injuries to

1

Plaintiff." (*Id.* ¶ 7.)  Count Two alleges additional facts:  that "[a]fter entering Plaintiff's apartment without permission, [Mnawer] struck Plaintiff with a weapon . . . constitut[ing] an assault on Plaintiff." (*Id.* ¶¶ 10-11.)  Counts Three through Ten allege additional counts sounding in negligence, trespass, and breach of defendants'[1] duty to exercise reasonable care of the property and to provide quiet enjoyment.  (*Id.* ¶¶ 13-49.)

Amguard issued a homeowner's insurance policy to Mnawer effective January 22, 2022 through January 22, 2023.  (D.E. 1, Compl. ¶ 6.)  The policy contained the following personal liability coverage:

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

(D.E. 1-1 & Ex. A, Policy, at 17.)

---

[1] The state court defendants include Alabed Mnawer, Khader Mnawer, John Does 1-10, and ABC Corp. 1-10.

"Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in" bodily injury or property damage.  (*Id.* at 2.)

The policy contained the following exclusion for expected or intended bodily injury:

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

a.  Is of a different kind, quality or degree than initially expected or intended; or

b.  Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property[.]

(*Id.* at 19.)

On May 29, 2025, Amguard sent Mnawer a letter acknowledging his request for coverage on the underlying action and informed him that it would provide a defense pursuant to a full reservation of rights.  (D.E. 1-1 & Ex. C, Acknowledgment Letter, at 1.)  According to the complaint, Amguard is still providing Mnawer a defense.  (D.E. 1, Compl. ¶ 15.)  Discovery is ongoing in the underlying action and expected to conclude on July 21, 2026.  *See Glenn Schmidt v. Alabed K. Mnawer*, PAS-L-003393-24.

3

Amguard filed the instant declaratory judgment suit in this Court on July 11, 2025, invoking diversity jurisdiction.  (D.E. 1.)  It states one count for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), requesting:

(a)     A declaration that the damages allegedly suffered by Schmidt in the Underlying Action are not covered by the Policy because they were not the result of a "bodily injury" caused by an "occurrence" as defined by the Policy;

(b)     A declaration that Schmidt's alleged "bodily injuries" are not covered by the Policy because the alleged injuries were intended or expected by Mnawer when he intentionally struck Schmidt and are therefore excluded from coverage by the Policy;

(c)     A declaration that AmGUARD has no obligation to provide defense or indemnity coverage under the Policy for the damages allegedly suffered by Schmidt in the Underlying Action;

(d)     Awarding AmGUARD whatever legal and equitable relief as it may be entitled, including costs and attorney's fees[.]

(*Id.* at 5-6.)

The summons and complaint were served upon Asma Mnawer, Mnawer's wife, on July 17, 2025.  (D.E. 6.)  Mnawer has not answered or otherwise responded to the complaint, and the Clerk of the Court entered default against him on August 26, 2025.  (D.E. 8.)  Amguard subsequently filed this motion, which is unopposed, for default judgment on September 29, 2025.  (D.E. 12.)  In support, it filed a certification of G. William DeLaney (D.E. 12-2) and a moving brief.

## III.     Discretionary Jurisdiction under the DJA

The DJA provides that courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  "The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts."  *Reifer v. Westport Ins.*

4

*Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).  This discretion is "unique and substantial," and courts may abstain from exercising jurisdiction based on "considerations of practicality and wise judicial administration."  *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 n.5, 282 (3d Cir. 2017) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995)).

The Third Circuit has "directed courts deciding whether to entertain a declaratory action to weigh certain enumerated and other factors 'bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for [federal] resolution.'"  *Id.* at 282 (quoting *Reifer*, 751 F.3d at 138).  The first consideration is whether there is a "parallel state proceeding," which is a "significant factor."  *Id.* (quoting *Reifer*, 751 F.3d at 143-44).  "[T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise."  *Id.* (quoting *Reifer*, 751 F.3d at 144).  A proceeding is parallel when it "involves the same parties and presents the opportunity for ventilation of the same state law issues."  *Id.* at 284 (citation modified) (quoting *Wilton*, 515 U.S. at 283).  An insurer's federal declaratory judgment action is not parallel to an underlying state court action where the insurer is not a party to the state court action.  *Id.* at 287.  But the Third Circuit has recognized that, even if the proceedings are not parallel, abstaining from exercising jurisdiction may still be warranted if "determining the issue of coverage will rely on questions central to the underlying liability proceeding."  *Id.* at 287 n.12.

Courts must give "meaningful consideration" to the following eight factors before exercising or declining to exercise jurisdiction under the DJA:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;

5

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 282-83 (quoting *Reifer*, 751 F.3d at 146).

Courts have denied declaratory relief in actions similar to this one, where the requested declaration would require the court to determine facts that are squarely at issue in an underlying state court proceeding. *See e.g.*, *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224-25 (3d Cir. 1989) (noting the potential for duplicative litigation and conflicts of interest where "the same factual question"—like whether a tort was caused intentionally—"lies at the heart of both an insurance coverage dispute and the underlying tort action"); *Berkley Ins. Co. v Daniels*, 2024 WL 3379068, at *3 (D.N.J. Apr. 24, 2024) (Arleo, J.) (holding that "because factual issues bearing on the coverage dispute necessarily overlap with the Underlying Action, and to avoid duplicative litigation, the Court will exercise its discretion and abstain from jurisdiction"); *Cont'l Indem. Co. v. H&M Int'l Transp., Inc.*, 2019 WL 1379884, at *4 (D.N.J. Mar. 26, 2019) (Walls, J.) (staying the matter where "the same central issue" was being litigated in the underlying personal injury action and the federal declaratory judgment action); *Nationwide Mut. Fire Ins. Co. v. McNulty*, 1997 WL 805165, at *5 (E.D. Pa. Dec. 30, 1997) (declining to grant summary judgment on the issue of indemnification where the requested declaratory relief "would require

6

resolution of the issue of whether [defendant] committed a negligent [or an intentional] act");

*Zurich Ins. Co. v. Alvarez*, 669 F. Supp. 307, 309 (C.D. Cal. 1987) (declining to exercise

jurisdiction under the DJA because "the Court would be required to decide predicate facts which

may be fundamentally at issue in the state court action"). *But see Phila. Contributionship Ins.*

*Co. v. Malcolm*, 2012 WL 2459401, at *1-4 (D.N.J. June 27, 2012) (Kugler, J.) (granting

summary judgment on facts similar to the case at bar).

On the other hand, courts have granted declaratory relief in insurance cases where there is

an issue that can be determined by looking at the policy and the state court and federal pleadings.

*See, e.g.*, *State Farm Indem. Co. v. Van Pelt*, 2025 WL 2918675, at *1, *7-8 (D.N.J. Oct. 14,

2025) (Shipp, J.) (finding that the insurer had no duty to defend or indemnify the Van Pelts

where their son, who was involved in a car accident, was admittedly not named on their

insurance policy and did not live with them); *Great Lakes Ins. SE v. Ross*, 652 F. Supp. 3d 472,

475-76, 480 (D.N.J. 2023) (Williams, J.) (finding that the insurer had no duty to defend or

indemnify the insured-homeowners where the insurance policy contained an independent

contractor exclusion and the decedent was working as an independent contractor at the time of

his injuries); *Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 128-30, 139-40 (E.D. Pa.

2022) (finding that because the defendant pled guilty to the unauthorized use of the rental

company truck involved in a car accident, and unauthorized users were not covered under the

insurance policy, defendant was not an insured under the policy).

The Third Circuit's decision in *Terra Nova Ins. Co. v. 900 Bar, Inc.* is instructive.  There,

Terra Nova, an insurer, brought an action in federal court requesting a declaration that it had no

duty to defend or indemnify its insured, 900 Bar, in state court actions brought by individuals

who were shot at a bar that 900 Bar owned.  *Terra Nova*, 887 F.2d at 1216-17.  The claims

7

against 900 Bar were for negligence and assault and battery; the insurance policy between Terra Nova and 900 Bar contained a coverage exclusion for assault and battery. *Id.* at 1217.

The district court granted a stay[2] of the action pursuant to the DJA, finding "the same issues of state law will be determined in a pending state suit"; that an "inherent conflict of interest" existed between the Terra Nova's duty to defend its insured and its efforts to argue the policy exclusion applied; and that "duplicative litigation" may result if a stay was not granted. *Id.* On appeal, Terra Nova argued that its declaratory judgment action could be decided based on the state court pleadings alone without inquiry into the facts at issue. *Id.* at 1225.

The Third Circuit upheld the stay of Terra Nova's duty to indemnify but reversed the stay of Terra Nova's duty to defend, holding that the state courts pleadings alleged negligence as well as assault. *Id.* at 1226.

As to the duty to indemnify, the Court noted:

the state suits may establish that [the individual defendant] committed an assault and battery and that this was the direct cause of any injuries. If so, his actions would fit the exclusionary language and the key issue in the declaratory judgment action would be resolved favorably to Terra Nova. If the state suits establish that there was no assault and battery, the exclusion would not apply to defeat coverage.

*Id.* at 1227.

Consequentially, "[l]ooking solely to the state court pleadings, the duty to defend exists because Terra Nova may have to indemnify 900 Bar," which "compel[s] rejection of Terra Nova's challenge to the stay of the duty to indemnify." *Id.* at 1228. The Court found that "[s]ince Terra Nova disclaims any current desire to determine the facts in the state court actions,

---

[2] Courts utilize the same factors and considerations in deciding whether to exercise jurisdiction under the DJA and whether to stay a case under the DJA. *Id.* at 1224-25.

the potential duty to indemnify precludes a declaratory judgment at this time that it has no duty to indemnify." *Id.*

## IV.    Discussion

Amguard requests declarations that it has no duty to defend or indemnify Mnawer in the underlying action because Mnawer acted intentionally when he struck Schmidt, and expected or intended bodily injuries caused by an insured are not covered by the policy.  (D.E. 1, Compl., at 5-6; D.E. 12, Mtn. for Default Judgment, at 4-6.)  The complaint in the underlying action raises a claim for assault at Count Two; however, it also raises negligence claims.  (*See* D.E. 1-1 & Ex. B, State Court Compl. ¶¶ 6-49.)  Mnawer answered the complaint, denying Schmidt's allegations and raising affirmative defenses.  *See Glenn Schmidt v. Alabed K. Mnawer*, PAS-L-003393-24, 1/27/25 Answer.  There have been no substantive rulings in the underlying action, and discovery is ongoing.  *See generally id.* at docket.

If the Court were to grant Amguard's requested relief, it would have to find that Mnawer intentionally injured Schmidt.  That fact is contested, a central issue in the underlying action, and cannot be determined by merely looking at the policy and the pleadings.  These realities, analyzed in conjunction with the factors discussed *supra*, counsel against exercising discretion under the DJA.  Indeed, "when the same central issue is being litigated in an underlying personal injury action and a federal declaratory judgment action, a federal court has grounds to abstain." *Cont'l Indem.*, 2019 WL 1379884, at *4; *see also Kelly*, 868 F.3d at 287 n.12 ("[I]n certain circumstances, determining the issue of coverage will rely on questions central to the underlying liability proceeding. . . .  Even if the proceedings are not parallel as we have defined it, such may be the type of situation which nevertheless warrants a court's abstention." (citation omitted)); *McNulty*, 1997 WL 805165, at *5 & n.2 (finding a determination on "the issue of whether

9

[defendant] committed a negligent [or an intentional] act . . . would be inappropriate in a declaratory judgment action at this time").

With this posture in mind, the Court turns to its required analysis of the *Reifer* factors to decide whether it should exercise jurisdiction over this declaratory judgment action.  As discussed, the Third Circuit has made clear that cases are not parallel when "[t]he issue of coverage is not necessary to the resolution of the state action." *Kelly*, 868 F.3d at 287.  Strictly speaking, because Amguard is currently not a party to the underlying action, the coverage issue is not before the state court judge, and the cases are not parallel.  This weighs in favor of exercising jurisdiction, but it is not dispositive.

While the first *Reifer* factor would technically resolve the question of Amguard's liability by determining whether Schmidt's injury is covered by the policy, the Court cannot find that this consideration weighs in favor of exercising jurisdiction because it is not clear whether Mnawer in fact assaulted Schmidt.  The second factor is neutral; since both the underlying action and this action were brought in New Jersey, these forums are equally convenient to the parties.  As to the third factor, it does not appear that there is a "public interest in settlement of the uncertainty of obligation," and as to the fourth, there is no more convenient remedy available because this Court and the state court are equally capable of declaring whether the policy applies to Schmidt's injuries. *See Cont'l Indem.*, 2019 WL 1379884, at *3.

As to the fifth factor, there is "a general policy of restraint when the same issues are pending in a state court." *Id.* "'[T]he same factual question' lies at the heart of both [this] insurance coverage dispute and the underlying tort action." *Terra Nova*, 887 F.2d at 1225.  That is, whether Mnawer intentionally or negligently caused Schmidt's injuries resolves both the claims in the underlying action and Amguard's claim for declaratory relief.  This factor therefore

10

weighs against exercising jurisdiction.  Sixth, and similarly, there is risk of duplicative litigation if the Court opines on Mnawer's intent in granting or denying declaratory relief, as this issue is before the state court in the underlying action.  This factor weighs against exercising jurisdiction. *See Berkley Ins. Co.*, 2024 WL 3379068, at *3 & n.5 (finding the fifth and sixth factors favor abstention "because the main substantive issues that the Court must determine to assess the Policy's applicability . . . must also be determined to resolve the Underlying Action").

The seventh factor, involving the risk of "procedural fencing," does not apply because Amguard is not a party in the state court proceeding and because it brought this suit in the same state as the underlying action.  *See Cont'l Indem.*, 2019 WL 1379884, at *4.  This factor is neutral.  Eighth and finally, the Court finds a conflict between Amguard's ongoing defense of Mnawer in the underlying action and its characterization of the underlying action and request for declaratory relief here.  In the underlying action, Amguard is providing Mnawer a defense and disputing that Mnawer assaulted Schmidt.  Here, Amguard is arguing just the opposite, that Mnawer did assault Schmidt, and because of this intentional act Schmidt's injuries are not covered by Mnawer's insurance policy.  It asks this Court to declare a key fact:  that Mnawer intentionally injured Schmidt.  (D.E. 1, Compl. at 6 (requesting a declaration that Schmidt's "alleged injuries were intended or expected by Mnawer when he intentionally struck [him]").)  It is inappropriate "to permit an insurer to prove facts in a federal declaratory judgment action to establish a policy exclusion when those same facts would necessarily result in the insured being found liable in an underlying state court proceeding." *Zurich Am. Ins. Co. v. MJF Trucking, LLC*, 2022 WL 2953691, at *4 (E.D. Pa. July 25, 2022) (citing *Allstate Ins. Co. v. Harris*, 445 F. Supp. 847, 851 (N.D. Cal. 1978)).  This last factor weighs against exercising jurisdiction.

The Court finds on balance, these factors weigh against exercising jurisdiction, particularly given nature of the declaratory relief sought, the nature of the underlying action, and what can be gleaned from the pleadings and the policy.  On this record, the Court cannot determine whether Mnawer intended to cause Schmidt's injuries.  It is therefore unclear whether the policy's coverage exclusion applies, or whether Mnawer's alleged conduct falls within the policy's definition of an "occurrence."  But if the state court finds that Mnawer unintentionally or negligently caused Schmidt's injuries, the exclusion would not apply to defeat coverage.  As in *Terra Nova*, where determination of the insurer's duties depended on whether the defendant committed an assault, here, the state court complaint raises negligence claims in addition to assault claims.  (D.E. 1-1 & Ex. B, State Court Compl. ¶¶ 7-49.)

This Court declines to weigh in on the disputed factual issue of Mnawer's intent and conclusively declare that the policy does or does not apply to Schmidt's claims.

## V.    Conclusion

For the foregoing reasons, the Court declines to exercise its jurisdiction under the DJA and denies Amguard's motion on that ground.  An appropriate order accompanies this opinion.


Dated: June 12, 2026                                 */s/ Katharine S. Hayden*
                                                     Katharine S. Hayden, U.S.D.J.